Good morning, Mike Lohr on behalf of 7-Eleven. If I could reserve two minutes for rebuttal. Just watch the clock. This is a case involving damages. Now, under the ADA, there are no damages. Under California law, there are injunctive relief and damages under the ADA. There's only injunctive relief. And there's a difference between the standing for injunctive relief and standing for damages under California law. And so this is solely under California law that we're dealing with here today. Well, standing is one of those words that gets used in lots of different ways. And standing in federal court is governed by, as the Supreme Court has recently directed us, by whether there's a case or controversy, Article III standing. The California Supreme Court doesn't have to deal with that concept. And so as I read their opinion, standing is being used basically as a stand-in for, is there liability under the UNDER Act? And so the California Supreme Court has told us that, yes, this plaintiff or a plaintiff in this person's position has given us rules to apply in determining whether or not there's liability for this person. But although the California Supreme Court uses the term standing, I would pause before using it because it means something a little different. I agree, Your Honor. I agree. It's a term of art they use. It simply means can you recover? Do you have a case? And so I agree with that. But be that as it may, there are different rules for bringing an injunctive claim and different abilities to bring an injunctive claim and different rules and requirements for bringing a damage claim under California law. Under California law, you're required to have an intent to go to a place of public accommodation, to be a customer, to utilize the goods and services as any other customer would utilize them. Where is that? Where is a case that holds you need to show intent when there's actually been a transaction that's actually occurred? Antonini finds that. Ryler's Craft makes that distinction. Sorry, Raycraft v. Lee, California case, makes that. Do any of those involve customers who actually consummated a transaction? Antonini did. And that's out of this circuit, out of this court's determination. The plaintiff there made eight visits. Five of them, it was determined on summary judgment to begin with. Five of those, it was agreed that they were a bona fide purchaser, they made purchases. The other three, it was claimed that you were there as a plaintiff. Right, so the finding of needing intent didn't apply to the five where there was an actual transaction, did it? Well, but the three also, there were transactions. As you read the subsequent court ruling on that, there were purchases made, and the appellate court recognized that plaintiff in their brief argued that there were purchases made during these three transactions, that they were also there for litigation purposes. But part of that claim was about wheelchair access and being able to look at the, I guess, the Chipotle experience, right, being able to see the food being prepared. I don't know if one can overread that case into, because there are other cases that say if a customer has transacted, that's sufficient to have standing under the under act. That's — I mean, the White, the California Supreme Court, says that, well, blank, just without any qualifications. But White actually says that at trial, they've alleged enough. They've alleged the intent. At trial, they can claim the intent was not a legitimate intent. Because there are no transactions occurring in that case. But what you're saying, then, is that if the barrier actually prevented them from transacting business, then we're going to hold them to a higher standard than if it was some technical violation that somebody went to this location. No, I think what White is saying is if you've transacted, you've overcome the threshold of whether you're presenting yourself to the business. But if you're in an online business situation as White is, as Thirst and other cases, it's a little bit harder to decipher when do you cross over into standing by visiting a website. What more do you have to do? And that's what White was grappling with. But we don't have that here. We have a person, that plaintiff, who came and transacted. So I'm not — go ahead. But the language is bona fide customer. Not just a customer, but a bona fide customer. Well, he bought something, right? 7-Eleven got money from him. That sounds to me like it's pretty bona fide. It was an actual transaction. But it's an intent to be a bona fide customer. Where are you — so I think you're confusing motive with intent. So can you show me where in California's Supreme Court case law they say that motive for the transaction can defeat the showing when there has been an actual transaction? Not in California Supreme Court law, no. In this circuit's case law, yes. Not in — I'm not even sure. I keep saying Antonetti, but I think I'm losing a syllable in there someplace. Antonetti. It draws a distinction. It had to remand the damage award because the damages were awarded for both kinds of visits. But it didn't seem to me to suggest that for the — what was it, five? I forget which was five and which was three. But the actual transaction visits, there was no statement that I saw there that said, well, because he had an underlying motive that may have helped get him into that facility, he can't collect damages under the California Act for that. It seemed to me it said he could collect damages for the ones where there were actual transactions. But the other three, there were actual transactions, and he wasn't able to collect for those. Is that so? I thought he just visited in order to — he performed transactions in those three sort of litigation-related visits. Yes, he did.  And the court identifies that, as it says in the appellant brief. They mention that — what they say is the defense hasn't argued that those purchases were made for an ulterior or fraudulent matter. And then if you read the subsequent case law or the subsequent district court ruling, they specifically say in all transactions, in all visits, purchases were made. Okay, I'm reading from it. It says, on those visits when he was — my finger just hit it, so it jumped away. On those visits when he was not seeking to purchase food or to have the Chipotle experience, Antoninetti cannot recover money damages under the California Act. Here, the plaintiff was seeking and did consummate a transaction. So how does the case you have cited, which I mangle the name of, support your position? It supports my position in that the court is finding that the intent is to be a customer. And if you actually buy something, it seems to me that's intent to be a customer. Now, he may have a motivation to buy at this location, but I haven't seen anything in either our decisions or California law that suggests when there is an actual transaction, not merely visiting so I can file a lawsuit, but it is an actual transaction, that there aren't damages available under California law. I haven't seen that case. And this is what you pointed it to, but I don't see support in this case for that proposition. I am out of time if I'm – You may answer the question. Your Honor, the case is – this is for damages. California legislature instituted this so that persons that are actually aggrieved can recover damages. This puts it on its head. Someone goes to a location – If you're going to just repeat your argument, then we'll give you two minutes on rebuttal, unless you have a case site that you want to offer. I don't have a case site. Okay. Why don't you save your time, then we'll give you two minutes on rebuttal. Thank you. Good morning, Your Honor. My name is Tanya Moore, attorney for the Eppley. The court pretty much addressed my oral argument, and that's what I was going to say. So intention or intent is what are you going to do. Motivation is why. And standing does not deal with motivation, whether it's federal or state. Why a person bought something would be a standard very difficult to ascertain, if not impossible. I guess you can come up with some very narrow hypothetical where that can be done, but in general, human beings typically have many reasons and motives behind a single intent. Well, you do have a finding of fact here from the district court that basically says he was looking to find a defendant he could sue. So what do we make of that? So even if Mr. Gilbert's finding was that his primary motivation, not the sole motivation, but the primary motivation, was to hunt for IDA violations. Do we know what he bought? Yes. I do not recall, Your Honor, was some kind of a, you know, is there a drink? I think it was a drink on one occasion. On the other occasion, I think it was a lottery ticket. What I'm getting to really is that if his, that he bought something doesn't necessarily mean his sole motivation wasn't to find a defendant. I mean, if he thinks I got to get a transaction in order to qualify for my damage claim and goes in and buys a pack of gum, I don't know what the cheapest thing at 7-Eleven is, the drink might be it, get a big gulp for whatever it costs. That doesn't really change his motivation. It may answer a somewhat different question than California law requires, but is there a logical reason why the simple fact that a transaction was consummated should cause us to disregard that he was looking for a lawsuit? There is no just, I couldn't find any case in California that required determination on the issue of motivation and why somebody did what they did. In Tien, is... I mean, it comes up in federal court under the ADA with regard to injunction. We don't have injunction here because the fixes were already put in, but it may be that California law doesn't require or doesn't exclude a claim by somebody whose intent is to find a lawsuit. And I understand that that's the argument you're making, but I'm not sure it's so clear that the simple fact of buying a big gulp means that the motivation wasn't entirely to find a lawsuit. How do you determine motivation? Oh, we do it all the time. In criminal trials in particular, we have to, and the jury decides it's a finding of fact. And in this case, I mean, you didn't challenge the district court's finding of fact, which I thought was remarkably blunt. The court does not believe he would have visited the store on either day but for his desire to find violations of the ADA and under act in order to obtain a settlement or damages. So if that's the finding of fact, the court found a lack of intent to do anything other than find a lawsuit. Was the court referred to it even in that ruling as a primary? So there may be a secondary or a tertiary. So how many motivations, how many reasons why Mr. Gilbert bought that? Maybe he was hungry. Maybe he was thirsty. I'm going to stop anyway and might as well get my drink. I get that. But if the court says and finds there's a finding of fact that's not challenged now, he wouldn't have visited the store but for his desire to find a lawsuit to extract damages or a settlement. But the law might disfavor that. And, indeed, it has within our court in ADA injunction cases. Now we're talking about the California statute, and I acknowledge that's different. So that's why I come back to the question, why should we understand California law to say the fact that he wouldn't have visited but for the search for a lawsuit, buying the pack of gum or buying the lottery ticket or whatever it was he bought should override that? Doesn't that encourage lawsuits in a way the law may not want to encourage? There is no case that would support that interpretation. And when we're talking about standing state, federal, we're talking about concrete facts, not conjectural facts. Mr. Gilbert, here. I'm not talking about conjecture. I'm talking about a finding of fact by the district court that is unchallenged. Primary reason or primary. That was the finding that the court made. But all the California cases that defendants relied upon here address intent, not motivation. There is nothing that extends it to motivation. That's another layer of the onion here that makes these cases possible. So you basically are asked to extend. So I take it your argument, if I understand it, is if someone has different motivations but they transact with the business, that's enough to pass the threshold. You don't know of any case where an additional litigation motivation would not disqualify someone from standing under the UNRRACT. Is that what you're saying? No, because in a brick-and-mortar establishment, it's really difficult to come with a scenario where somebody comes in, makes a purchase, and that does not equal the intent to make the purchase in being a bona fide customer. It just would not make sense. In the cases, all the cases that we're dealing with are about situations where plaintiffs never made the purchase or availed themselves of services. So, therefore, the intent requirement was not clear in those cases for the court, and the court, therefore, wanted to know whether or not it was met. I mean, I guess I would say, you know, I know the district court made that finding a fact, and it's uncontested. I'm just not sure what legal significance to attach to it, if anything, because as I read White, White discusses another case called Quar, which was about a plaintiff that went to several car washes and asked for, you know, he was challenging a discriminatory pricing based on gender, and then he promptly sues afterwards. And the fact that he seemed to have a litigation motivation, excuse me, in addition to those visits, did not disqualify him from standing under the UNRRAC. So White seems to talk about cases where an additional litigation motive doesn't bar someone from being able to pursue UNRRAC claims. Yes, exactly. And the court, even though the court made this finding, the court found that also that didn't have any legal significance for decision toward damages because that was not a requirement. Whether it's primary, secondary motivation, that was not a standard that had to be met. Now, there was a discussion about Doninetti and the five versus three visits. The three visits when the plaintiff went to Chipotle were for the purpose of litigation, preparation for deposition, conducting an inspection, whatever. It was not the purchase of goods. So he, but for those appointments that he had with a lawyer or inspector or whoever, he would not have gone to the store. Here we have a plaintiff that went for the first time to 7-Eleven, and he is being accused of doing this as a pretext. Well, first of all, he didn't know what he was going to encounter, if anything. So, I mean, I'm not going to dispute the court's finding. It is what it is. But I also agree with the court that even if his motivation was to bring the lawsuit and fix the violations and address whatever issues that they had with the parking, et cetera, still does not negate the fact that he personally went, purchased the items, consumed them as any consumer would, and in the process encountered difficulty, embarrassment while he had to overcome the barriers. At this point, 25, it's been more than 25 years at ADA, there should be no 7-Eleven store that is where somebody will go, a disabled person will go and encounter barriers like that. Can I ask a different question? Does Mr. Gilbert's death affect the recovery of statutory damages under the UNRRACT? Not to my understanding. Well, the case law I've seen on this, his estate would still recover. Is there a case that you can point us to to say that he's okay? Yes. The one that comes to mind is Kalani v. Starbucks. Also, plaintiff was during the pendency of the appeal, and in that case Starbucks argued that because of that he should not be awarded damages, his estate should not receive damages, and that was, you know, he was awarded damages. This is a problem that can be sorted out, but I wondered if we need to remand because your motion to substitute actually substituted not the estate but his children, and I don't know fortunately anything about probate law in California, but I'm not sure that identifying who might be the heirs to his estate actually accomplishes what you've just described, which is that the estate may appropriately substitute. So that's not our day job, and that's why I say it may be that we have to let the district court figure out who actually is entitled to the money. But I get your point. Yes, and Dylan was, his children in distress after his passing was not easy. I'm being told that they're working on doing the proceedings, whatever. They have bigger issues than the statutory damage award here. We get that. So determination of who, you know, exactly and how it should be distributed, absolutely that should probably be left to the district court to decide. Okay. Thank you, counsel. Your Honor, I would just go back to Antonetti. Antonetti says on those visits when he was not seeking to purchase food or to have Chipotle experience, Antonetti cannot recover money damages under the California Act. But, in fact, we had. Those transactions, nothing was purchased. In this case, something was purchased. They were purchased. That's not how I read it. I'll read it again, but that's not how I see it. Read it, and then you need to read the subsequent decision of the district court where it said they were purchased. Well, that's different from what the actual holding of Antonetti was. You're saying there was a finding of fact on remand that purchases occurred? Correct. And this court recognized that. This court says the record does not show whether Antonetti purchased food on any of these three litigation visits, although he states in his opening brief, nor was any evidence offered at any time that Antonetti's purchase during these litigation-related visits were made in bad faith with fraud or deceit. And so plaintiff argued that purchases were made on appeal. And what about that Quar case that I was mentioning with opposing counsel that White discusses where there's this litigation motive? And I think in that case the plaintiff never, as I read White, the plaintiff didn't pay a discriminatory price, but he nevertheless had standing for asserting it. So why under California law does a litigation motive disqualify you? Because in that case the question before the court was, do they actually have to buy something? Because it used to be you buy something, you have to buy something, otherwise you're barred. And Quar was a case where you've done enough to get past a motion to dismiss or a motion for summary judgment because now we need to make a finding of fact of what your actual motive is, what your intent is. And that's what Quar stands for. It's not finding that, well, you didn't purchase anything, but it doesn't address whether or not litigation would bar any recovery. Okay. Thank you, counsel, for your arguments. Thank you. This matter is submitted.
judges: CLIFTON, SUNG, SANCHEZ